SAMUEL COLVIN assignee of PATRICK COLVIN *against* ROBERT MORRIS and terretenants.

A sells lands to B, and covenants that he shall hold them discharged of all former grants, dower, &c. B gives him a mortgage, and bonds for part of the consideration money, which A assigns to C, and dies. His widow recovers in dower, the obliger under the plea of payment with leave, &c., shall be allowed the value of her dower out of the consideration money.

THIS was a motion for a new trial, grounded on the following facts: Patrick Colvin, on the 15th November 1792, by deed, (his wife Margaret not joining therein,) conveyed certain lands in Bucks county to Robert Morris, in fee simple, in consideration of 4000*l*. He covenanted therein, that he was the lawful owner of the premises, and had a right to convey the same; and that the said Robert, his heirs and assigns, should hold and occupy the same without interruption, free and clear, and freely and clearly discharged, against all former grants, jointures, dower &c. In the deed were also inserted, covenants of further assurance, and general warranty against all persons whatsoever.

On the same day, the said Robert executed a mortgage to the said Patrick of the said premises, reciting three bonds of the same date, for securing the payment of 3000*l*. as follows: 1250*l*. payable on the 1st April 1794, (which was afterwards duly discharged,) 1250*l*. payable on the 1st April 1795, and 500*l*. payable on the 1st April 1796, with interest on the said sums respectively, from the 1st April 1793. In the mortgage was contained a covenant, that the said Robert should retain 500*l*. in his hands, to pay off a mortgage of the premises to Langhorne Biles, he paying the interest yearly.

On the 5th February 1796, Patrick Colvin makes his will in writing duly executed, and thereby devises to Margaret his wife, certain real property in lieu of her dower; to his son Samuel the plaintiff, certain lots of ground, the sum of 300*l*., and a bond of 500*l*. due from the said Robert Morris, &c. &c., and appoints his sons Daniel, Samuel and Richard his executors.

On the 12th April 1796, the said Patrick assigns the mortgage and two bonds due from the said Robert, to the said Sa-

muel his son, and authorizes him to make use of his name, to recover the monies due thereon.

On the 4th December 1796, Patrick Colvin died at Baltimore, possessed of considerable real and personal property.

On the 17th of the same month, his will was proved there, and on the 24th, Daniel and Samuel, his sons, resign their executorship; and on the same day, Margaret, his widow, renounces her devises under the will, and elects to take her dower at common law.

A *scire facias* issued on the mortgage in Bucks county, returnable to May term 1797, which being removed into the Supreme Court, came on to trial at the last October assizes, at Newtown, before M'Kean, late C. J. and Shippen, J. on the plea of payment, with leave, &c.

The defendant's counsel offered to show in evidence to the jury, that a summons in dower had issued at the suit of Margaret Colvin, against them, in the Circuit Court of the United States for Pennsylvania, on the 21st June 1797, and that she obtained judgment thereon in October term 1798, and insisted that the same should be considered as a partial discharge of the mortgage; but the court overruled the evidence, and directed that a verdict should be taken for the amount of principal and interest of the two last bonds, which was done accordingly.

Mr. Ingersoll in support of the motion for a new trial. It certainly was intended by Patrick Colvin and Robert Morris, that the lands should pass to the latter as effectually and freely as if the wife of the former had executed the conveyance. It is expressly stipulated that he should hold the lands discharged of dower. On a covenant to hold lands unincumbered, a possibility of charge, no discharge being had, will support covenant; though it be no present charge, yet when it does arise, it is a breach. Gouldsb. 59, 65, Harrington v. Rudyard and wife; and in the latter page, the very case now before the court, is put by the counsel, "where a man makes a feoffment, and covenants that it shall be discharged, and afterwards his wife recovers her dower, the covenant is broken, and yet it was but a possibility." S. C. 1 Leon. 92. Owen 6. Moor. 249, 759. 1 And. 162. 10 Co. 52, a. 2 Sid. 167.

If then a charge may happen in case of any circumstance previous to the contract, the dower of the widow is within the words of the deed. The vendee has received an indemnification against the contingent interest of the widow, and the deed and mortgage must be considered together as one instrument. The mortgage referring to

the deed, is an implied notice to the assignee, and puts him on the inquiry which it was his duty to make. He would hence naturally be informed, that the mortgagor would not be bound to pay for an estate which he did not receive unincumbered, according to the terms of his contract.

Every assignee takes subject to every equitable consideration. Doug. 636. So of bonds in this state. 1 Dall. 27. Can then Samuel the son be in a better situation than Patrick the father? Could the father recover on this mortgage, if there was a strong probability of his wife's surviving him, unless he gave security to indemnify the vendee against her future interest? Or could his executors compel the payment thereof, after his widow had recovered her dower? The warranty descends o his son Samuel, as one of his heirs and devisees; he could not therefore, as assignee of the mortgage, recover in ejectment two thirds of the lands against the terretenants, if they were ready and willing, and offered to pay him the full balance which was due thereon, deducting only the reasonable estimated value of the widow's claim. In 1 Dall. 15, the jury allowed for the dower of two old women, in a suit for the purchase money of land. A wife has an inceptive interest in her husband's real estate, immediately on her marriage; and in England, the dower of the wife is not subject to the payment of her husband's debts, though here it is otherwise. If a contingent interest on some prior limitation of the lands had come into operation and fully swept away the whole title conveyed by Patrick Colvin to Robert Morris, it will not be pretended that the latter should be subjected to pay the consideration money. It is fully settled, that a purchaser has a right to retain part of the purchase money, in order to pay off an incumbrance. Here the assignee had no right to demand payment of the two last bonds, until the widow's dower was released, or an equivalent was allowed therefor. What ought not to be demanded, must be considered as paid. 1 Dall. 260. The uncertainty of damages on Patrick Colvin's breach of contract, is no objection to the doing full justice to the defendants; there should be a deduction *pro tanto*. If the present plaintiff really purchased this mortgage, subject to the widow's claim of dower, no injury will be done to him by making an allowance for such claim; if the contrary was the case, let him seek for contribution from his father's estate. Why should the defendants pay the mortgage money, and then recur to the executor of Patrick Colvin for indemnification in a distant state? Is it not more just and equitable, that the son and devisee of the mortgagee on whom the warranty descends, should sustain this hardship, than

a purchaser who is willing to pay the uttermost farthing, and only asks for a compliance with the solemn agreement of the ancestor? We do not set up this defence by way of defalcation or set-off, but insist on a defect of consideration as to part of the lands.

Messrs. M. Levy and J. B. M'Kean for the plaintiff. This point was slightly mentioned at the trial, and the sole question is, whether the plaintiff or defendants shall be turned round to seek redress from the executor of Patrick Colvin? The defence set up cannot operate by way of set-off, because unliqudated damages are not objects of defalcation.

Every thing in contemplation of the parties shall be presumed to have been inserted in a written contract. In the case of Langhorne Biles's mortgage, there is an express agreement that the vendee shall retain 500*l.* in order to discharge it; and if it was intended that he should also retain against the possibility of dower, it was equally natural to provide for that event. These bonds were made payable in 1794, 1795, and 1796, unconditionally, and if they had been regularly paid at · the periods affixed, the present difficulty would not have occured. By remissness and breach of contract, Morris ought not to be put in a better situation than if he had fairly complied with his engagement.

In 1 Dall. 15, the right of dower existed at the time of the sale, but here was a mere possibility of the wife's surviving the husband, an event which has taken place since the mortgage and bonds were assigned. Can this right of dower be valued with accuracy? How long is it to be assumed that the widow will live? The vendee has a certain and complete action against the representative of Patrick Colvin on his covenant, to which he should resort; but the present attempt is calculated to throw all the burthen on one devisee, against the spirit of the common law, and the true principles of equal justice. If such future contingent interests are permitted to embarrass the honest assignees of bonds, when the obligor has his full remedy elsewhere, few persons will hazard the taking of assignments.

In Hamington *v.* Rudyard and wife already cited, the suit was brought against the administrator of the obligor, which greatly varies it from the present case. It is hoped that the court will not give the vendee an advantage which it was his own folly and negligence not to provide for in the written contract. If he should exclaim *durum est*, the ready answer presents itself, *ita lex est scripta*. The mortgagee has done what was in his power to guard against his wife's dower, by the devise in his will failing therein his estate should be responsible, not his innocent assignee.

The court said, the assignee took the assignments at his own peril, and stood precisely in the same situation as Patrick Colvin himself. The present is no more than the common case of bonds taken for the consideration of lands sold, and assigned, where part of the lands have been evicted by an adverse title, wherein juries have always allowed to the obligor the value of the lands recovered. There can be no recovery where the whole consideration of a bond totally fails; and the same principle applies where the consideration fails in part, *pro tanto*.

New trial awarded.